UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

HAROLD GILES,

        Plaintiff,

v.

GE MONEY BANK,

        Defendant.

2:11-CV-434 JCM (CWH)

**ORDER**

Presently before the court is defendant GE Money Bank's motion to dismiss or stay this action pending arbitration. (Doc. #14). Plaintiff Harold Giles has filed an opposition (doc. #19) and GE Money has replied (doc. #23).

Also before the court is Giles' motion to defer ruling on the motion to dismiss or stay, to allow the completion of limited arbitration-related discovery. (Doc. #17). GE Money has filed an opposition (doc. #18), Giles did not reply.

**BACKGROUND**

Giles applied for three credit cards issued by GE Money between 2007 and 2008 while making in-store purchases at Wal-Mart, Sam's Club, and Dillard's Department Store. *See* Compl. ¶ 53. While applying for the various cards in the store, Giles signed and submitted credit card applications, which among other things, informed him that the credit card agreements would "include[] an arbitration provision that may limit [his] rights unless [he] reject[ed] that provision

**James C. Mahan**
**U.S. District Judge**

under the [a]greement's instructions." Koehler Decl. ¶¶ 11-12, 26-28, 43-45, Exs. B, G, L.

Some time after the in-store application, Giles received his cards in the mail. Together with the cards, he also received a packet of materials that included the terms governing his relationship with GE Money. The terms of each agreement explained that the parties were required to arbitrate any dispute relating to the credit card account or Giles' relationship with GE Money. *See* Koehler Decl. ¶¶ 14, 30, 47 & Exs. C, § 21; H, § 20; N, § 20. The agreements also explained that Giles would have no right to participate in a class action, either in court or before the arbital forum. *Id.*

The credit agreements did inform Giles that he had 60 days to inform GE Money that he did not agree to the arbitration provisions. *Id.* Giles was given two additional opportunities to opt-out of the Dillard's arbitration agreement, as that agreement was amended twice, each time granting Giles an additional 60 days to opt-out. *Id.* at ¶ 58 & Exs. O, R. Giles never exercised this right. *Id.* at ¶ 60. Giles did not opt-out of any of the arbitration clauses and instead activated and began using his cards. *See id.* at ¶¶ 17, 33, 60.

When activating each of the three credit cards, Giles also agreed to sign up for GE Money's Payment Protection plan. Compl. at ¶ 54. After enrolling in the various Payment Protection plans, Giles received a second packet of materials containing the Payment Plan amendments to the underlying credit agreements. These amendments reaffirmed that any disputes, including those related to the Payment Protection plans, were subject to the arbitration provisions. *See id.* at ¶¶ 22, 37, 55 & Exs. E, § 11.8; I, § 10.8. The Payment Plan materials made clear that the Payment Plan was governed by the same arbitration provisions of the underlying credit card agreement, stating: "Any arbitration provisions that may apply with respect to your [c]ardholder [a]greement shall also apply with respect to this [a]greement and the [p]rogram." Koehler Decl. Ex E, I, Q.

## DISCUSSION

In deciding whether to compel arbitration and stay proceedings under the Federal Arbitration Act ("FAA"), a district court's role is limited to "'determining (1) whether a valid

**James C. Mahan**
**U.S. District Judge**

- 2 -

1  agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at
2  issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron*
3  *Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000)). The FAA "places
4  arbitration agreements on an equal footing with other contracts, and requires courts to enforce
5  them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, – U.S. –, 130 S. Ct. 2772,
6  2776 (2010) (internal citations omitted). Arbitration agreements may "be invalidated by
7  'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by
8  defenses that apply only to arbitration or that derive their meaning from the fact that an
9  agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, – U.S. –, 131 S. Ct. 1740,
10 1742-43 (2011) (quoting *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

11 Giles argues that the court should not compel arbitration and stay the proceedings for two
12 reasons. First, Giles argues that it is unclear whether a valid arbitration agreement exists.
13 Second, Giles contends that the arbitration agreement is unconscionable. As an alternative
14 argument, Giles requests that this court stay its decision of motion to compel arbitration pending
15 discovery necessary to the unconscionability defense. The court will begin by addressing Giles'
16 motion to stay pending discovery, then address his two substantive arguments opposing the
17 motion to compel arbitration.

18     1. Motion to Stay Pending Arbitration-Related Discovery

19 Giles requests that the court stay its determination on GE Money's motion so that it can
20 propound discovery regarding whether the arbitration clause at issue is unconscionable. The
21 court is unimpressed by this argument. Whether the arbitration agreement is enforceable against
22 Giles, is a straightforward matter of contract law. *See AT&T Tech., Inc. v. Commc'ns Workers of*
23 *Am.*, 475 U.S. 643, 649 (1986). The court can glean from the face of the document whether it is
24 unconscionable. *See Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004).

25 The court also notes that the need to seek a stay pending discovery is a situation of Giles'
26 own making. Giles' opposition to the motion to compel arbitration was due 15 days after service
27 of the motion. *See* LR 7-2. The parties, however, stipulated to grant Giles 68 days to respond to
28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1  the motion. *See* Dkt. #15.  Despite having over two months in which to propound discovery and
2  respond to the motion to dismiss, Giles waited until July 26, 2011 – only 12 days before the
3  response was due – to serve his discovery requests on GE Money.  Giles now seeks this court to
4  intervene and cause further delay by granting a stay.  If this discovery was important to Giles, he
5  should have moved sooner in serving his requests.
6      2.  Motion to Compel Arbitration
7      Though the law regarding contract formation and defenses are to a large extent uniform,
8  the parties disagree as to the applicable law that governs the contract.  A federal court sitting in
9  diversity applies the forum state's choice of law rules.  *See Abogados v. AT&T, Inc.*, 223 F.3d
10 932, 934 (9th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).
11 Nevada's choice of law principles permits broad limits to parties to choose the law that
12 determines the validity and effect of their contract.  *See Sievers v. Diversified Mortgage*
13 *Investors*, 603 P.2d 270, 273 (Nev. 1979).  The Nevada Supreme Court has stated that "[i]t is
14 well settled that the expressed intention of the parties as to the applicable law in the construction
15 of a contract is controlling if the parties acted in good faith and not to evade the law of the real
16 situs of the contract." *Id.*
17     The arbitration clauses contain choice of law provisions that clearly state: "Utah law shall
18 apply to the extent state law is relevant under Section 2 of the FAA in determining the validity of
19 this provision." Koehler Decl., Exs. C, § 20; H, § 20; R, p. 9.  Giles has not shown that the
20 application of Utah law will violate any public policy of Nevada or that it is otherwise improper
21 to apply Utah law.  Thus, Utah law governs the validity of the arbitration clauses. *See id*.
22     *(a) Validity of Arbitration Agreement*
23     Giles' contends that the arbitration clauses are invalid because he never consented to
24 them.  Silence can constitute acceptance when "the conduct of the party denying a contract has
25 been such as to lead the other reasonably to believe that silence, without communication, would
26 be sufficient" to create a contract.  1 Corbin on Contracts § 3.19, p. 407 (rev. ed. 1993); *see also*
27 2 Williston on Contracts § 6.50.  Moreover, Utah's statute of frauds provides an exception for
28

James C. Mahan
U.S. District Judge

- 4 -

1  credit card agreements, holding that such agreements are enforceable even without signature if:
2  "(I) the debtor is provided with a written copy of the terms of the agreement; (ii) the agreement
3  provides that any use of the credit offered shall constitute acceptance of those terms; and (iii)
4  after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests
5  funds pursuant to the credit agreement or otherwise uses the credit offered." Utah Code § 25-5-
6  4(2)(e).
7       Here, undisputed evidence establishes that the credit card applications for each of the
8  three credit cards stated that the resulting credit card agreement would contain an arbitration
9  provision. Koehler Decl. ¶¶ 11-12, 26-28, 43-45, Exs. B, G, L. Additionally, Giles has not
10 disputed that he received the credit card agreements in the mail and failed to opt-out of the
11 arbitration provisions. Instead, Giles activated and began using the cards. Giles therefore had
12 advance notice of the arbitration provisions and failed to reject those provisions when given the
13 opportunity to do so. Giles' silence regarding the arbitration clause and use of the credit card is
14 sufficient to constitute an acceptance of the credit cards on the terms offered, including the
15 arbitration provision.
16                     *(b) Unconscionability of Arbitration Agreement*
17      To prevail in his unconscionability argument, Giles must show that the arbitration clauses
18 are both procedurally and substantively unconscionable. *Ryan v. Dan's Food Stores, Inc.*, 972
19 P.2d 395, 402 (Utah 1998). Procedural unconscionability exists when "a party lacks a
20 meaningful opportunity to agree to the clause terms." *D.R. Horton, Inc. v. Green*, 96 P.3d 1159,
21 1162 (Nev. 2004). "Procedural unconscionability often involves the use of fine print or
22 complicated, incomplete or misleading language that fails to inform a reasonable person of the
23 contractual language's consequences." *Id.* Substantive unconscionability "focuses on the one-
24 sidedness of the contract terms." *Id.* at 1163 (quoting *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th
25 Cir. 2003)).
26      Here, Giles submitted credit card applications for each of the three credit cards that stated
27 in bolded font that the agreement "includes an arbitration provision that may limit [his] rights
28

**James C. Mahan**
**U.S. District Judge**

- 5 -

1  unless [he] rejects that provision . . ." Koehler Decl. Exs. B, G, L. In the Wal-Mart application,
2  this text as set-off from the remaining terms in the agreement by a box drawn around out. *Id.*,
3  Ex. B, p. 5. In the Sam's Club application, it was contained in a box that was colored differently
4  from the rest of the contract and set the terms apart from the remaining provisions. *See id.*, Ex.
5  G, p.1. In the Dillard's application, the arbitration provisions were contained under a bold header
6  stating "Signature Required," summarizing the key terms of the application.
7        The language used in each of the applications is simple and clear. Moreover, unlike the
8  arbitration provision at issue in *D.R. Horton*, which was included on the backside of the signature
9  page, the Sam's Club and Dillard's application listed the provisions in close proximity to the
10  signature line (the Wal-Mart application contained no signature as applicants are directed to
11  acknowledge their acceptance via electronic touch screen). The credit card applications gave
12  Giles ample notice of the arbitration provisions. This notice was then followed by the actual
13  credit card agreements, which included the arbitration provisions in all capital, bolded font.
14  Thus, there was no fine print, complicated, or incomplete language at issue here. *Cf. D.R.*
15  *Horton*, 96 P.3d at 1162. Moreover, Giles had the opportunity to opt-out of the arbitration
16  provisions while maintaining the credit cards. Accordingly, the clauses were not procedurally
17  unconscionable.
18        Giles contends that because the arbitration clauses contain class action waivers, they are
19  substantively unconscionable. However, Utah law permits class action waivers so long as the
20  waiver is disclosed to the debtor in the consumer credit contract and typed in bolded or all capital
21  font. *See* Utah Code § 70C-4-105(2). Here, the waiver meets these requirements. Additionally,
22  the Supreme Court's recent decision in *AT&T Mobility LLC v. Concepcion*, – U.S. –, 131 S. Ct.
23  1740 (2011), provides clear guidance that class action waivers are enforceable despite any
24  negative effects on small-dollar claims. *Id.* at 1753. Giles' attempt to limit the Supreme Court's
25  holdings to its particular facts are unpersuasive. Several courts have recognized that the holding
26  in *AT&T Mobility* is broadly applicable to state rules limiting the effect of class action waivers,
27  and not limited to the California rule it was abrogating. *See, e.g., Green* v. *SuperShuttle Int'l,*
28

**James C. Mahan**
**U.S. District Judge**

- 6 -

*Inc.,* – F.3d –, 2011 WL 3890326, at *3 (8th Cir. Sept. 6, 2011) (finding Minnesota class action waiver law preempted under *AT&T Mobility*);*Day v. Persels* & *Assocs., LLC*, 2011 WL 1770300, at *7 (M.D. Fla. May 9, 2011) (confirming that *AT&T Mobility* is not limited to the *Discover Bank* rule); *Arellano v. T-Mobile USA, Inc.,* 2011 WL 1842712, at *2 (N.D. Cal. May 16, 2011) (rejecting argument that *AT&T Mobility* was narrowly limited to facts; "on the contrary, [it] decided that states cannot refuse to enforce arbitration agreements based on public policy").

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, that plaintiff Harold Giles' motion to stay adjudication of the motion to compel arbitration (doc. #17) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that defendant GE Money Bank's motion to dismiss or stay this action pending arbitration (doc. #14) be, and the same hereby is, GRANTED. The matter is dismissed without prejudice.

DATED September 27, 2011.

_____
UNITED STATES DISTRICT JUDGE